UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LUCY A. CHANDLER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:11-cv-01593-JMS-DKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| *Defendant*. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Lucy A. Chandler applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act in October 2004, stating that she had been disabled since September 20, 2004.  Her application was denied both initially and upon reconsideration by the Defendant, Commissioner of the Social Security Administration ("the Commissioner").  She then requested an Administrative Law Judge hearing.  Administrative Law Judge Peter C. Americanos ("the ALJ") held a hearing on January 6, 2006, and later issued a finding that Ms. Chandler was not entitled to receive disability benefits.  The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review.  After filing a civil action, her application was remanded for a rehearing under sentence four of 42 U.S.C. § 405(g).

On August 25, 2009, the Appeals Council remanded Ms. Chandler's claim for readjudication.  The ALJ held a hearing on December 8, 2009, and again determined that Ms. Chandler was not entitled to receive disability benefits.  Again the Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial

review.  Ms. Chandler has filed this civil action under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits.

# I.

## RELEVANT BACKGROUND

Ms. Chandler was fifty-six years old at the time of her disability application in October 2004.  [R. 20, 41, 383.]  She has a high school education.  [R. 385.]  Ms. Chandler had one job, as a jewelry inspector, that pertains to her prior relevant work history.  [R. 435.]  Ms. Chandler claims she is disabled because of a severe impairment, osteoarthritis of her right knee, as well as arthritis in her hands and elbows.  [R. 152, 428.]

Ms. Chandler's medical history includes a partial lateral meniscectomy surgery on her right knee in 2002, performed by orthopedist Dr. Edward Hellman.  [R. 209.]  Ms. Chandler's pain began to increase six months after her surgery.  [R. 261.]  In 2003, Dr. Hellman observed that X-rays revealed the lateral compartment of Ms. Chandler's right knee was nearly bone-on-bone, which led to significant osteoarthritis in that knee.  [R. 209.]  However, after prescribing medication, Dr. Hellman noted in October 2003 that Ms. Chandler's pain was controlled and her walking ability was unlimited.  [R. 206.]  He did note, however, that her knee had a degenerative condition.  [*Id*.]

In July 2004, Ms. Chandler began to experience pain in her right hip following a fall.  [R. 256.]  Ms. Chandler made an appointment with Dr. Allison Wright, who became her primary care physician.  [R. 256, 312.]  Initially, Dr. Wright attributed Ms. Chandler's hip pain to the fall but, over a year later, revised her initial opinion attributing her hip pain to osteoarthritis and placed Ms. Chandler on pain medication.  [R. 256.]  In September 2004, Ms. Chandler began complaining of right shoulder pain while the pain in her knee also increased.  [R. 257, 261.]

During this time, Ms. Chandler also experienced swelling in her hands, where she previously had carpal tunnel surgeries, and elbows.  [R. 214, 251, 257.]  On September 27, 2004, she saw Dr. Jarvis Earl regarding her knee pain but declined a cortisone shot.

By October 2004 Ms. Chandler was taking ten medications to ease arthritic pain, anxiety, inflammation, blood pressure, and muscle tension, and to facilitate her sleep.  [R. 123-24.]  On October 25, 2004, Ms. Chandler saw Dr. Earl again but decided to receive a cortisone shot in hopes to relieve her knee pain and, after first ignoring Dr. Earl's recommendation, she began using a cane.  [R. 260, 265.]  On November 3, 2004, Ms. Chandler underwent an EMG and nerve conduction study to address the pain in her right upper extremity, but that examination indicated she retained normal functional capacity.  [R. 250-51.]  At the request of the state agency, on December 28, 2004, Ms. Chandler was also examined by Dr. Elpidio Feliciano.  [R. 148-49.]  Dr. Feliciano stated that Ms. Chandler's walk was slow and antalgic, but steadier and faster with the use of her cane.  [R. 149.]  Dr. Feliciano further stated that Ms. Chandler had normal bilateral fine finger manipulation meaning she was able to button buttons, zip and unzip zippers, and pick up coins with no problems.  [R. 150.]

On February 8, 2005, state agency sources released additional opinions.  [R. 137-44, 157-70.]  In one opinion, Dr. W. Bastnagel, a physician, stated that Ms. Chandler could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday.  [R. 138.]  Dr. Bastnagel further noted that Ms. Chandler experienced handling and postural limitations, such as climbing stairs, kneeling, and crouching.  [R. 139-40.]

At follow-up appointments in 2005, Ms. Chandler refused Dr. Wright's suggestion of receiving knee replacement surgery and received another cortisone injection from Dr. Earl.  [R.

132, 304.]  On May 16, 2005, Ms. Chandler went to an immediate care center complaining of severe pain in her elbows.  [R. 265, 290.]  She was given a splint for her elbows and was still in pain two days later when she saw Dr. Wright and received an injection in both of her elbows. [R. 305.]  Dr. Wright recommended that Ms. Chandler continue to wear the elbow braces and noted a specialist could be required if the pain did not subside.  [R. 305.]

In July 2005, Dr. Wright completed an Arthritis Residual Capacity Questionnaire.  [R. 312-17.]  Dr. Wright indicated that Ms. Chandler had a poor prognosis and suffered from severe bilateral knee pain, reduced range of motion in the elbows and knees, joint instability, and muscle weakness.  [R. 312.]  Dr. Wright also noted that these impairments would last indefinitely.  [R. 314.]  Dr. Wright indicated that emotional factors, such as depression due to pain, contributed to the severity of Ms. Chandler's symptoms and functional limitations.  [R. 313.]  However, Dr. Wright did not answer the question requesting that she describe any psychological limitations that might affect Ms. Chandler's ability to work a regular job.  [R. 317.] The ALJ sent a letter to Dr. Wright on January 5, 2010, requesting clarification with regards to the psychological limitations but, to date, has not received a response.  [R. 502-03.]

When describing Ms. Chandler's likely work performance, Dr. Wright provided contradictory responses that Ms. Chandler might be "incapable of low stress jobs" and "capable of low stress jobs." [R. 313.]  Dr. Wright also noted that Ms. Chandler could only sit for fifteen to twenty minutes before getting up, could not stand for up to five minutes, and could only sit, stand, and walk for less than two hour increments in an eight-hour workday with normal breaks. [R. 314-15.]  Dr. Wright also noted that Ms. Chandler could occasionally lift and carry ten pounds or less, rarely lift and carry twenty pounds, and never lift and carry fifty pounds.  [R.

316.]  Dr. Wright lastly noted that Ms. Chandler would be required to miss four days per month due to her impairments.  [R. 317.]

In the summer of 2005, Ms. Chandler saw Dr. Earl to receive additional injections in her right knee.  [R. 300, 324.]  Dr. Earl noted that the pain in Ms. Chandler's shoulder was due to a chronic rotator cuff tear.  [R. 324.]  However, Ms. Chandler specifically requested that pain medication be the only treatment.  [*Id*.]  Ms. Chandler also saw Dr. Wright, who indicated that knee replacement surgery was likely the only option to alleviate the progressively worsening arthritis in her knees that was "decreasing her mobility and her spirits." [R. 325.]

On May 10, 2007, Ms. Chandler underwent total knee arthroplasty.  [R. 511-14.]  By July 16, 2007, Dr. Earl reported that Ms. Chandler's gait had substantially improved.  [R. 545.]  A month later, Dr. Earl stated that Ms. Chandler's gait pattern continued to improve and she was making good progress.  [R. 544.]  On November 13, 2007, six months after her total knee replacement surgery, Dr. Earl reported that Ms. Chandler met him with a smile and was clearly continuing to improve.  [R. 543.]  She displayed good balance and alignment with essentially full range of motion.  [*Id*.]  Ms. Chandler stated that she suffers from only occasional stiffness.  [*Id*.]  A year after the surgery, Dr. Earl noted Ms. Chandler's continued improvement and recommended that it would not be necessary for her to undergo another radiograph for four years.  [R. 541.]

Additional facts will be provided as necessary to review the denial of benefits.

## II.

### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381

F.3d 664, 668 (7th Cir. 2004) (citation omitted).   For the purposes of judicial review, "[s]ubstantial evidence is relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  In reviewing the ALJ's findings, the Court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong."   *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotation omitted).

If the ALJ committed no legal error or substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits.  Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1.      If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2.      If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3.      If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4.      If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

6

5.      If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e).  The burden of proof is on the claimant for the first four steps then it shifts to the Commissioner at the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III.

### THE ALJ'S DECISION

Utilizing the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Ms. Chandler was not disabled.

At Step One, the ALJ found that Ms. Chandler had not engaged in substantial gainful activity since the alleged onset date of her disability.  [R. 428.]

At Step Two, the ALJ identified one severe impairment from which Ms. Chandler suffers: degenerative joint disease (osteoarthritis) of the right knee.  [*Id*.]

At Step Three, the ALJ determined that Ms. Chandler did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 404.1520(d),  404.1525, and 404.1526).

At Step Four, the ALJ found that Ms. Chandler had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she was able to occasionally lift and carry up to twenty pounds and able to frequently lift ten pounds.  [R. 432.]  She also required the freedom to

stand for about five minutes every hour during the workday, although she would not need to leave a work station.  [*Id*.]  The ALJ concluded that Ms. Chandler was capable of performing past relevant work as a jewelry inspector, and that this work did not require the performance of work-related activities precluded by Ms. Chandler's RFC (20 C.F.R. §404.1565).  [R. 435.] Based on these findings, the ALJ concluded that Ms. Chandler was not disabled.  [R. 422-24, 425-37.]

Because the ALJ determined at Step Four that Ms. Chandler was not under a disability, as defined in the Social Security Act, at any time from September 20, 2004, the alleged onset date, through December 31, 2009, the date last insured, the ALJ did not make a Step Five determination.  [R. 437.]

## IV.

### DISCUSSION

Ms. Chandler challenges the ALJ's decision for four reasons.  First, Ms. Chandler argues that the ALJ erred at Step Four by finding that Ms. Chandler had more than one past relevant job. Second, Ms. Chandler argues that the ALJ erred at Step Four by finding that Ms. Chandler could perform her past relevant work as actually performed.  Third, Ms. Chandler argues that the ALJ erred at Step Four by finding that Ms. Chandler could perform her past relevant work as generally performed in the national economy.  Finally, Ms. Chandler argues that after making his determination at Step Four that Ms. Chandler was not disabled under the Social Security Act, the ALJ erred in not considering Step Five and believes the Court should hold that Ms. Chandler was clearly disabled.

### A.    Ms. Chandler's Step Four Challenge of One Past Relevant Job

It is not disputed that Ms. Chandler maintained only one past relevant job, as a jewelry inspector, which was the ALJ's determination in the only reviewable decision set forth in this case.  [R. 435.]  Therefore, the Court concludes that Ms. Chandler had only one past relevant job, a jewelry inspector.

**B.     Ms. Chandler's Step Four Challenge of "Actually Performed"**

Under the relevant regulation, a claimant is not disabled if she can perform her past work either as she actually performed it *or* as it is generally performed in the national economy.  20 C.F.R. § 404.1560(b) (emphasis added). Ms. Chandler seeks a determination that the ALJ's finding that she was not disabled was based on the "generally performed" alternative.  The Commissioner does not disagree.  [Dkt. 21 at 5.]  The Court affirms that the ALJ found that Ms. Chandler could perform her past relevant work as generally performed in the national economy.  [R. 436.]

However, the Court agrees with the Commissioner that this non-finding by the ALJ is not outcome determinative.  [Dkt. 21 at 5.]  The regulation compels a non-disabled finding under either circumstance.  A finding that a claimant could not perform past relevant work as actually performed does not compel a disability finding if substantial evidence supports the ALJ's determination that the claimant can perform past relevant work as generally performed in the national economy.  Such will be the Court's inquiry here: Given the RFC found by the ALJ, does substantial evidence support the ALJ's finding that Ms. Chandler can carry out her past relevant work as it is generally performed in the national economy?

**C.     Ms. Chandler's Step Four Challenge of "Generally Performed"**

Ms. Chandler challenges the ALJ's finding that Ms. Chandler could perform her past relevant work as a jewelry inspector as generally performed because the ALJ violated the law of

the case doctrine.  *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).  The law of the case doctrine is applicable to judicial review of administrative actions and requires "the trial court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart."  *Id.*  An administrative agency must, on remand from a court, conform to that principle.  *Id.*  *Wilder* holds, however, that "[n]ew evidence can furnish compelling grounds for departure from a previous ruling."  *Id.*  "'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir.1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  But if there is no new evidence or the new evidence does not undermine the previous ruling on sufficiency, then that previous ruling must stand.  *Id.*

Here, Ms. Chandler seeks to bind the ALJ on remand to the determination made on the initial review that her past work should be characterized as "light."  She accuses the Commissioner of shopping for a new vocational expert, and claims error because the vocational expert on remand characterized Ms. Chandler's past work as sedentary and semi-skilled.  Given the RFC found on remand, that determination supports the conclusion that Ms. Chandler was not disabled.  Thus the determinative issue before the Court is whether under *Wilder,* there is compelling reason, such as new evidence, for the ALJ to depart from the earlier "light work" finding.  The Court finds that there is.

The earlier Court founds several flaws in the first review of the case, including lack of substantial evidence to support RFC, an incomplete hypothetical to the vocational expert, and the failure to address Ms. Chandler's ability to perform her past relevant work as generally performed.  The Court further found the record insufficient to establish that Ms. Chandler was

entitled to benefits as a matter of law, noting that "it is not clear to the Court that [Ms,] Chandler will be able to overcome her burden and succeed at step-four."

The entire context of the record on remand is important to consider. Whereas the prior Court assumed that Ms. Chandler regularly worked ten-hour days with eight hours sitting, one hour standing, and one hour walking, the evidence on remand was contrary to that assumption. [R. 436.] In her December 9, 2009 hearing, Ms. Chandler stated that she regularly worked eight-hour days and only occasionally had to work ten-hour days during busy months. [R. 590.] This presents compelling new evidence for the ALJ to consider when making his assessment of the requirements of Ms. Chandler's past relevant work.

Ms. Chandler relies on the prior Court's suggestion that, on remand, the ALJ should reexamine the RFC and determine whether Chandler can generally perform her past relevant work, but seeks to limit the nature of that review. [R. 474.] The ALJ followed the Court's instruction and in so doing, relied upon Dr. William Newman's orthopedic medical expertise to determine Ms. Chandler's new RFC. [R. 435.] Relying on an orthopedic expert who had the opportunity to review all of the evidence on the record allowed the ALJ to afford Dr. Newman's opinion testimony a higher level of credibility than that of Ms. Chandler's family physician, Dr. Wright. Dr. Wright had no expertise in orthopedics. The ALJ's reliance on Dr. Newman is further justified given Dr. Wright's inconsistent evaluations and the lack of communication with the ALJ regarding those inconsistencies. Ms. Chandler does not dispute Dr. Newman's opinion.

After Dr. Newman's determination, the ALJ questioned Vocational Expert Mr. Robert Barber ("the VE"), who stated that Ms. Chandler could perform her past relevant work as generally performed in the national economy. [R. 599.] Of course, an ALJ may enlist a vocational expert to "offer expert opinion in response to a hypothetical question" about whether

"physical or mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work."  20 C.F.R. § 416.960(b).  A hypothetical question is proper when it reflects the "impairments to the extent the ALJ found them supported by evidence in the record."  *Ehrhart v. Secretary*, 969 F.2d 534, 540 (7th Cir. 1992).  Furthermore, the "[h]ypothetical questions posed to [vocational experts] must include *all* limitations supported by medical evidence in the record."  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

As noted, the ALJ relied on an incomplete hypothetical question to the vocational expert in Ms. Chandler's prior case.  [R. 480.]  Here, armed with new evidence concerning hours of work and the opinion of the orthopedic specialist, the new VE was asked the following question from the ALJ at the hearing:

> ALJ: Mr. Barber, I'll ask you to assume a hypothetical individual of the claimant's age, education, [and] work experience who can do work at the sedentary level that has the following limitations: This person cannot do repeated forceful gripping with either hand or use vibrating tools. By that I mean by forceful gripping, I'm talking about the action required to grab a hammer and drive a nail. This person must also be allowed to alternate sitting and standing between positions for five minutes per hour without leaving the workstation. Now you testified earlier that this person's prior work was sedentary and semi-skilled but the skills did not transfer to other sedentary work.
>
> VE: That's correct, Your Honor.
>
> ALJ: Okay. So under this hypothetical, is the prior work possible?
>
> VE: Under this hypothetical, yes, Your Honor.

[R. 599.]  The first vocational expert made an approximation of what Ms. Chandler's previous jobs actually would qualify as because they were not listed in the DOT.  [R. 398-99.]  The VE on remand stated that Ms. Chandler's job, as described by her in her disability report, was of sedentary, semi-skilled work.  [R. 593-94.]  The Court agrees with the Commissioner that posing a revised hypothetical question based on the new RFC, which was asked to be reconsidered on

remand, was reasonable.  Substantial evidence supports an ALJ's decision to rely on a vocational expert's response when posed with a revised hypothetical question that accurately identifies the limitations included in the RFC finding.  *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).  The remand order in this case was not so narrow to preclude the ALJ from reexamining his determination or allowing another vocational expert to testify.

The original remand order very clearly requests the Commissioner make additional findings regarding Ms. Chandler's RFC and her ability to perform her past relevant work as "generally performed."  Once this request was made, the ALJ was justified in modifying or his findings of fact or decision based upon the new evidence, *Travis v. Sullivan*, 985 F.2d 919, 924-925 (7th Cir. 1992) (citing 42 U.SC. § 405 (g)).  New material evidence opens the door to a full and fair review and justifies altering the classification in any event.

As previously noted, the Court's role is limited to determining whether the ALJ used the correct legal standard and whether substantial evidence exists supporting his conclusion.  *Barnett v. Barnhart*, 381 F.3d at 668.  Substantial evidence is relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  When the ALJ commits no legal error *or* substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits.  Therefore, the ALJ did not err in determining that Ms. Chandler was not disabled at Step Four under the guidelines set out by the Social Security Act by showing that substantial evidence supports the conclusion that she could perform her past relevant work as generally performed in the national economy.

### D.     Ms. Chandler's Step Five Challenge of "Clear Disability"

Finally, Ms. Chandler argues that the Court should find that she is clearly disabled at Step Five.  However, "[a]n award of benefits is appropriate only if all factual issues have been

resolved and the 'record can yield but one supportable conclusion.'" *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (quoting *Campbell v, Shalala*, 998 F.2d 741, 744 (7th Cir. 1993)).   Here, however, the ALJ's determination at Step Four is supported by substantial evidence in the record to deny Ms. Chandler disability benefits.   Thus, a Step Five determination is unnecessary.

**V.**

**CONCLUSION**

The standard for disability claims under the Social Security Act is stringent.   "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010).   Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.   *Id.*   Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. Chandler does not qualify for disability benefits.   For the foregoing reasons, the final decision of the Commissioner of the Social Security Administration in this case is **AFFIRMED**.   Final judgment will be entered accordingly.

10/15/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**

J. Frank Hanley II
lauras@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov